## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BKK JOINT DEFENSE GROUP
c/o Project Navigator, Ltd.
One Pointe Drive, Suite 320
Brea, CA 92821
an unincorporated association,

BAYER CROPSCIENCE, INC.,
2 TW Alexander Drive
Research Triangle Park, NC 27709,

        Plaintiffs,

        v.

FEDERAL DEPOSIT INSURANCE
CORPORATION,
550 17th Street, NW
Washington, DC 20429,
in its capacity as Receiver for Washington Mutual
Bank,

        Defendant.

Civil Action No. _____

## COMPLAINT

1.     Plaintiffs BKK Joint Defense Group ("JDG") and Bayer CropScience, Inc. ("Bayer") (collectively, "Plaintiffs") bring this action pursuant to 12 U.S.C. § 1821(d)(6) for *de novo* determination of Proofs of Claim that the Plaintiffs each filed against the Washington Mutual Bank ("Washington Mutual") Receivership. The Proofs of Claim were based on the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, on other law, and on a written agreement to which Washington Mutual was a party. The Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for Washington Mutual, disallowed these claims.

1

## PARTIES

2.     Plaintiff the JDG is an unincorporated association of the type described in Federal Rule of Civil Procedure 17(b)(3)(A).  The JDG is a collection of entities operating without a corporate charter and working together towards the common objective of cooperating in a common response to or defense of claims arising out of the BKK Facility, as defined below.  Exhibit A, attached hereto, is a copy of the Proof of Claim that the JDG filed against the Washington Mutual Receivership on December 26, 2008, and identifies the JDG members.  Washington Mutual also was a member of the JDG at the time it was placed into Receivership.

3.     Plaintiff Bayer is a corporation duly incorporated under the laws of the State of New York, with its principal place of business located in Research Triangle Park, North Carolina.  Bayer is a member of the JDG, and is named separately because it filed a separate Proof of Claim against the Washington Mutual Receivership.

4.     Defendant FDIC is an independent agency of the federal government established by Congress in 1933.  The FDIC is charged with, among other duties, administering the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811 *et seq*. ("FDI Act"), and the federal deposit insurance system.  On or about September 25, 2008, the United States Office of Thrift Supervision declared Washington Mutual insolvent and appointed the FDIC as Receiver for Washington Mutual.  Washington Mutual was a federal savings bank chartered pursuant to the Home Owners' Loan Act, 12 U.S.C. §§ 1461-70.  The FDIC is named herein in its capacity as Receiver for Washington Mutual.

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction of this matter pursuant to 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1331. The Court has personal jurisdiction over the FDIC pursuant to 12 U.S.C. § 1821(d)(6).

6.    Venue in the District of Columbia is proper pursuant to 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1391(e).

## STATEMENT OF FACTS

### A.    The FDIC Receivership of Washington Mutual

7.    On or about September 25, 2008, the Director of the Office of Thrift Supervision, by Order No. 2008-36, declared Washington Mutual insolvent, appointed the FDIC as Receiver for Washington Mutual, and announced that the FDIC was immediately taking possession of Washington Mutual.  The FDIC immediately thereafter became responsible for Washington Mutual's obligations and liabilities by operation of law.

8.    On the same date as its appointment as Receiver for Washington Mutual Bank, the FDIC entered into a Purchase and Assumption Agreement ("P&A Agreement") with JPMorgan Chase Bank, N.A. ("JPMorgan Chase") dated September 25, 2008.  Pursuant to this P&A Agreement, the FDIC sold substantially all of Washington Mutual's assets and liabilities to JPMorgan Chase.  A true and correct copy of the P&A Agreement is attached hereto as Exhibit B.

### B.    Plaintiffs' Proofs of Claim

9.    Pursuant to section 11(d) of the FDI Act, 12 U.S.C. § 1821(d), the FDIC set December 30, 2008, as the last day to file claims against the Receivership.  On December 26, 2008, the JDG submitted a timely Proof of Claim to the FDIC for Washington Mutual's liability to the JDG in connection with a 583-acre landfill in West Covina, California, now owned and

3

operated by BKK Corporation (the "BKK Facility"). *See* Exhibit A (the JDG's Proof of Claim against the Washington Mutual Receivership). On December 30, 2008, Bayer timely submitted a separate Proof of Claim to the FDIC for Washington Mutual's liability to Bayer in connection with the BKK Facility. A true and correct copy of Bayer's Proof of Claim against the Receivership is attached hereto as Exhibit C.

10.    As of the Receivership date, each current member of the JDG, including Bayer and Washington Mutual, had been identified by certain regulatory agencies, including the California Department of Toxic Substances Control ("DTSC"), as potentially responsible parties with respect to environmental conditions at the BKK Facility and response costs relating to it.

11.    On December 3, 2004, DTSC issued Imminent and Substantial Endangerment Determination and Order and Remedial Action Order No. 1/SE-D 04/05-004 (the "ISE Order") with respect to the BKK Facility to fifty-one (51) separate entities ("collectively, "Respondents"), including Washington Mutual and certain other members of the JDG. The ISE Order required the Respondents to perform certain response actions and to reimburse DTSC for certain response costs.

12.    The JDG was formed in 2005 so that its members could cooperate in a common response to or defense of claims arising out of the BKK Facility. The members of the JDG entered into a Joint Defense, Privilege and Confidentiality Agreement ("Joint Defense Agreement"), as amended and restated, as of February 28, 2005.

13.    Without admitting liability, each JDG Member, including Bayer and Washington Mutual, reached a settlement with DTSC in the case of *California Department of Toxic Substances Control, et al. v. American Honda Motor Co., et al.*, United States District Court, Central District of California, Case No. CV05-7746 CAS (JWJx), which was memorialized in a

consent decree, approved and entered by the District Court on or about March 9, 2006 ("First Amended Consent Decree"). The First Amended Consent Decree requires the JDG to perform certain operation, maintenance, and monitoring activities at the BKK Facility and to pay to DTSC certain response costs.

14.    Pursuant to the Joint Defense Agreement, each of the JDG members, including Washington Mutual, agreed to fund, on an interim basis and subject to reallocation, a portion of costs and expenses incurred regarding the joint defense activities of the JDG, including costs and expenses incurred in complying with the First Amended Consent Decree.

15.    Pursuant to the Joint Defense Agreement, the JDG, including Bayer, has incurred and has paid substantial necessary costs of response consistent with the National Contingency Plan to comply with the First Amended Consent Decree and expects to incur additional such costs in the future.

16.    As of the Receivership Date, Washington Mutual was obligated by law and by the Joint Defense Agreement to pay a portion of the environmental response costs incurred by the JDG, including Bayer, at the BKK Facility in order to comply with the First Amended Consent Decree. As of the Receivership Date, Washington Mutual had not fulfilled these obligations.

17.    Accordingly, Plaintiff JDG asserted a Proof of Claim against the Washington Mutual Receivership for $5 million in unpaid contractual obligations under the terms of the Joint Defense Agreement and First Amended Consent Decree. *See* Exhibit A (the JDG's Proof of Claim).

18.    Plaintiffs also anticipate that regulatory agencies may issue other administrative orders requiring the JDG members, including Bayer, to perform or fund work at the BKK Facility, and/or that regulatory agencies may file lawsuits or take other enforcement action

against JDG members.  Plaintiffs anticipate that regulatory agencies will contend that JDG members are liable for conditions at the BKK Facility under common law and applicable environmental statutes including, without limitation, CERCLA, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, and the Hazardous Substances Account Act, Cal. Health & Safety Code § 25300 *et seq.*

19.    Plaintiffs assert, among other things, that as of the Receivership date, Washington Mutual is liable to Plaintiffs under CERCLA for expenses, damages, and response costs that Plaintiffs have incurred and will incur in connection with the BKK Facility.

20.    Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), imposes liability on any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of.

21.    Washington Mutual is a "person" under CERCLA § 101(21), 42 U.S.C. § 9601(21).

22.    Each separate Plaintiff is a "person" under CERCLA § 101(21), 42 U.S.C. § 9601(21).

23.    The BKK Facility is a "facility" under CERCLA § 101(9), 42 U.S.C § 9601(9).

24.    On information and belief, Washington Mutual is the successor by merger to Home Savings Of America, FSB.  Home Savings Of America, FSB owned the property on which the BKK Facility is located at the time the property was originally sited and permitted for use as a landfill and during a period when hazardous substances were disposed of there.  Washington Mutual is therefore a "covered person" under CERCLA § 107(a), 42 U.S.C. § 9607(a).

25.     There has been a release or threatened release of hazardous substances from the BKK Facility into the environment within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22).

26.     Pursuant to their obligations under the Amended First Consent Decree and because of this release or threatened release of hazardous substances, Plaintiffs JDG and Bayer have incurred necessary costs of response consistent with the National Contingency Plan at the BKK Facility.  CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B).

27.     Washington Mutual therefore is liable under CERCLA to persons like the JDG and Bayer who have incurred any "necessary cost of response . . . consistent with the national contingency plan."  CERCLA § 107(a); 42 U.S.C. § 9607(a).

28.     Accordingly, Plaintiffs JDG and Bayer each asserted Proofs of Claim against the Washington Mutual Receivership for $75 million in estimated liability under CERCLA and other law.  *See* Exhibit A (the JDG's Proof of Claim) and Exhibit C (Bayer's Proof of Claim).

### C.     FDIC's Denial of Plaintiffs' Claims

29.     On March 23, 2009, the FDIC issued separate "Notices of Disallowance of Claim" to both the JDG and Bayer.  A true and correct copy of the FDIC's Notice of Disallowance to the JDG is attached hereto as Exhibit D.  A true and correct copy of the FDIC's Notice of Disallowance to Bayer is attached hereto as Exhibit E.  These Notices stated that the Receiver had reviewed each of the JDG's and Bayer's Proofs of Claim and had disallowed them for the following reason:

> The liability of Washington Mutual Bank associated with the BKK Landfill is a liability that was reflected on the books and records of Washington Mutual Bank at the time it failed.  Thus, pursuant to section 2.1 of the Purchase and Assumption Agreement ("P&A"), JPMorgan Chase Bank agreed to pay, perform and discharge the Washington Mutual Bank liability associated with the BKK Landfill.

30.    In its Notices of Disallowance, the FDIC did not deny the JDG's Proof of Claim or Bayer's Proof of Claim that Washington Mutual was liable to the JDG and Bayer for environmental response costs that the JDG, including Bayer, had paid and would pay in the future at the BKK Facility.  On the contrary, the FDIC simply denied that the Washington Mutual Receivership retained this liability, instead asserting that JPMorgan Chase had assumed the liability pursuant to Section 2.1 of the P&A Agreement.

31.    Section 2.1 of the P&A Agreement provides:

> Subject to Sections 2.5 and 4.8, the Assuming Bank expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing, including the Assumed Deposits and all liabilities associated with any and all employee benefit plans, except as listed on the attached Schedule 2.1, and as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed").  Notwithstanding Section 4.8, the Assuming Bank specifically assumes all mortgage servicing rights and obligations of the Failed Bank.

32.    On information and belief, JPMorgan Chase asserts that the books and records of Washington Mutual did not list liabilities associated with the BKK Facility as a liability of Washington Mutual.  Therefore, JPMorgan Chase has denied any responsibility to the JDG or to Bayer arising from the P&A Agreement.

33.    Since the FDIC disallowed Plaintiffs' Proofs of Claim solely on the conclusion that JPMorgan Chase assumed Washington Mutual's liabilities associated with the BKK Facility pursuant to the P&A Agreement, and JPMorgan Chase contends that it did not acquire Washington Mutual's liabilities associated with the BKK Facility pursuant to the terms of the P&A Agreement, Plaintiffs seek judicial determination of their Proofs of Claim pursuant to Section 11(d)(6)(A) of the FDI Act, 12 U.S.C. § 1821(d)(6)(A).

## CLAIMS FOR RELIEF

### COUNT I
### (Determination of Plaintiffs' Proofs of Claim)

34.    Plaintiffs incorporate the allegations and averments contained in paragraphs 1 through 33 as if set forth fully herein.

35.    Pursuant to Section 11(d)(6)(A) of the FDI Act, 12 U.S.C. § 1821(d)(6)(A), Plaintiffs seek a judicial determination of their Proofs of Claim.

36.    This claim is ripe for determination by this Court because Plaintiffs JDG and Bayer both received Notices of Disallowance dated March 23, 2009, of their respective Proofs of Claim, and this complaint for judicial determination of their Proofs of Claim is brought within sixty (60) days of those Notices.  12 U.S.C. § 1821(d)(6)(A).

37.    Plaintiffs seek a determination that their Proofs of Claim are valid and that the liability of Washington Mutual associated with the BKK Facility rests with the Washington Mutual Receivership.

## REQUESTS FOR RELIEF

Plaintiffs request that the Court grant the following relief:

1.    Enter an order declaring the JDG's Proof of Claim and Bayer's Proof of Claim to be valid and proven against the Washington Mutual Receivership in accordance with 12 U.S.C. § 1821(d)(11);

2.    Award Plaintiffs costs and attorneys' fees as may be permitted by law; and

3.    Grant such other relief as is appropriate.

Respectfully submitted,

Thomas R. Lotterman, Bar No. 375796
Theodore L. Hunt, Bar No. 979042
BINGHAM MCCUTCHEN LLP
2020 K STREET, NW
WASHINGTON, DC 20006-1806
Telephone:    202.373.6000
Facsimile:    202.373.6001

James J. Dragna
Lesley A. Coben
BINGHAM MCCUTCHEN LLP
355 SOUTH GRAND STREET
SUITE 4400
LOS ANGELES, CALIFORNIA, 90071
Telephone:    213.680.6400
Facsimile:    213.680.6499

Donald W. Fowler, Bar No. 381172
Rebecca A. Womeldorf, Bar No. 452034
HOLLINGSWORTH LLP
1350 I STREET, NW
WASHINGTON, DC 20005
Telephone:    202.898.5800
Facsimile:    202.682.1639

Counsel for Plaintiffs BKK Joint Defense
Group and Bayer CropScience, Inc.

Dated:  May 21, 2009